## HARPER *v.* CUNNINGHAM.

JUDGMENT RECORD ; EFFECT OF POWER OF ATTORNEY TO CONFESS JUDGMENT.

1. Where the record, on the trial of an issue raised by the plea of *nul tiel record* to a *sci. fa.* shows that appearance was entered by an attorney of the court and judgment confessed, the record will bind the defendant until it is shown that the attorney acted without authority.
2. The courts of this District have jurisdiction to render judgment upon confession either upon the appearance of the party in person or through a warrant of attorney for that purpose, except in cases within the meaning of the act of Maryland of 1747, prohibiting the exacting of bonds with power of attorney to confess judgment thereon.

No. 378. Submitted December 10, 1894. Decided January 16, 1895.

HEARING on an appeal by the plaintiff from a judgment in a proceeding by *sci. fa.* to revive a judgment. *Reversed.*

The COURT in its opinion stated the case as follows :

On June 1, 1878, Stephen V. Harper, the appellant, filed a declaration in the Supreme Court of the District against Samuel T. Brown and William Cunningham, trading as Brown & Cunningham, to recover the sum of $149.10, for services performed as pilot on a steam canal boat. The record does not show any service of process in this suit

upon either Brown or Cunningham, but the following warrant of attorney to Joseph J. Waters to confess judgment, appears therein :

" Know all men by these presents, that we, Brown & Cunningham, of Georgetown, District of Columbia, have made, constituted and appointed, and by these presents do make, constitute and appoint, Joseph J. Waters our true and lawful attorney for us and in our names to confess judgment against us in the two suits of John Reaves against Brown & Cunningham ; also Stephen V. Harper *v.* Brown & Cunningham, the one being for 149.10 dollars, and the other for 185.50 dollars, and hereby ratify whatever our said attorney may lawfully do in the premises.

" Witness our hands this 1st day of June, 1878.

"BROWN and CUNNINGHAM."

This was, on the same day, acknowledged by Brown before a notary public " to be the act of the firm."

On June 3, 1878, a judgment was rendered against the defendants as partners trading under the name of Brown & Cunningham, for the amount of the claim, by confession. reciting that the " defendants came here by their attorney, Mr. Waters, who enters the appearance of the defendants herein, and consents that judgment be entered herein against them for one hundred and forty-nine dollars and ten cents, with interest thereon from May 27, 1878, besides costs."

*Scire facias* issued on this judgment June 2, 1890, and was served upon both defendants.

Cunningham pleaded *nul tiel record* and issued was joined thereon. This was submitted to the court, who found for the defendant and entered judgment accordingly. There was another plea denying service of process in the original suit, and that anyone was authorized to appear for and confess judgment against him therein. This plea seems to have been waived, and the cause submitted upon the first.

*Mr. J. J. Waters* for the appellant.

*Mr. John Ridout* for the appellee.

Mr. Justice SHEPARD delivered the opinion of the Court:

The questions presented by the plea of *nul tiel record* are : 1. Is the record valid upon its face ? 2. Did the court have jurisdiction ? The plea put in issue simply the fact of the existence of the record, and was met by its production. "Defects appearing on the face of the record may be taken advantage of upon its production under a plea of *nul tiel record*; but those which require extrinsic evidence to make them apparent must be formally alleged before they can be proven. This we believe to be in accordance with the practice of all courts in which such defenses have been allowed, and it is certainly the logical deduction from the elementary principles of pleading." *Hill* v. *Mendenhall,* 21 Wall. 453, 455.

1. This record cannot be said to be invalid upon its face. It is not necessary here to decide the question whether one partner, either before or after dissolution of the partnership, can, without special authority, appear and confess judgment against all the partners, or can empower any one else to do so. Nor do we undertake to decide whether, under a proceeding like this, the defendant can show that the warrant of attorney under which Waters appeared and confessed the judgment was without his authority or knowledge.

Waters was an attorney of the court, and the judgment recites that he entered the appearance and confessed the judgment for both defendants. "A record which shows such an appearance will bind the party until it is proven that the attorney acted without authority." *Hill* v. *Mendenhall,* 21 Wall. 453, 454; *Hall* v. *Lanning,* 91 U. S. 160, 167; *Electric Lighting Co.* v. *Leiter,* 19 D. C. 575, 582; *Munnikuyson* v. *Dorsett,* 2 H. & G. 374; *Henck* v. *Todhunter,* 7 H. & J. 275, 278; *McCauley* v. *State,* 21 Md. 556, 569.

2. This brings us to the consideration of the second question raised by the plea.

The appellee's contention is that the judgment was void for want of power in the court to render it, and is founded on the provisions of the Maryland Act of 1747 (1 Kilty, Ch. 23) which reads as follows:

"An act to prevent evils arising from the entering up judgments upon bonds, commonly called judgment bonds, to direct the manner of issuing executions on loan office bonds, and to regulate certain fees therein mentioned.

"Whereas it has been the practice to take bonds, with power contained in the condition of such bonds upon non-payment, to any attorneys practicing in any court of record within the dominion of Great Britain, to confess judgment, and thereupon, without any previous process, judgments have not only been confessed in the provincial and county courts of this province, but also out of court, before a single magistrate, and executions have issued thereon, to the great damage of many people, who in case capias had issued, and they had time to plead to such bonds, many good reasons might have been pleaded against the same; for prevention of which evils for the future, it is humbly prayed that it may be enacted:

"Sec. 2. And be it enacted by the right honorable the Lord Proprietary, by and with the advice and consent of his Lordship's Governor and the Upper and Lower Houses of Assembly and the authority of the same, That from and after the end of this session of assembly, it shall not be lawful for any attorney practicing now, or who shall here-- after practice the law in any court of record within this province, or any other person whatever, to confess a judg-- ment, either in court or before one or more justices of such court or courts out of court, for any sum or sums of money or tobacco, or other matter, by virtue of any power or powers of attorney, either separate or contained in any such bonds, commonly called judgment bonds, which shall be taken or executed after the end of this session of assembly; nor shall it be lawful for any justices of any court of record within

this province to give judgment upon any such bonds, by virtue of any such power or powers."

The second section aforesaid is published by itself in some compilations of the laws in force in this District, and, so considered, its meaning is not plain. The meaning is aided, however, by the title and preamble of the act, both of which we have quoted. We think it evident that the mischief intended to be remedied was the practice of exacting bonds with a power of attorney, either expressed in the bond itself or in an instrument to accompany and operate with it, whereby any attorney who might be selected by the holder of the bond could appear for the maker and confess judgment against him before a justice, in or out of court, and at any time.

It seems, too, that this has been the generally accepted interpretation of the act in Maryland. In 1796 an act was passed by the legislature of that State, reorganizing courts and regulating proceedings therein, under the title of "An act for the better administration of justice in the several counties in this State." 2 Kilty, Ch. 43.

Section 5 of this act reorganizes the county courts, and among powers conferred on the chief justice and other justices, declares that "he may direct judgments to be entered on confession, or *non sum informatus*," etc. Section 20 provides: "That the said chief justice, or either of the associate justices, may, out of court, direct the clerk to enter judgments by confession, or *non sum informatus*, and such judgments shall be as legal and valid as if entered in court during its sitting."

The appellant contends that the effect of this act was to repeal the act of 1747, and to confer full power to enter judgment by confession in all cases.

To this we cannot assent. There is certainly no express clause of repeal; and it is a well established rule that repeals by implication are not favored. We see no inconsistency between the two statutes when the restricted operation of

the older one is recognized, and nothing to prevent their standing together.  Where this is the case, there is no repeal.  *State* v. *Stoll*, 17 Wall. 425, 430; *Chew Heong* v. *United States*, 112 U. S. 530, 550.

The question of repeal is of no importance, however, to appellant's case.  The claim upon which his judgment was confessed is not of the character prohibited by the act of 1747, as we construe that act.

The right to render judgments by confession upon demands of the same general nature as that of appellant in this case has been recognized in Maryland in many cases since the act of 1796, and in no one of them, so far as we have observed, has reference been made to any statute.  The right seems to have been unquestioned.  Evans' Practice, 339; *McMechen* v. *Mayor*, 2 H. & J. 41; *Turner* v. *Plowden*, 5 G. & J. 52; *Munnikuyson* v. *Dorsett*, 2 H. & G. 374; *Harris* v. *Alcock*, 12 Md. 226; *Huston* v. *Ditto*, 20 Md. 305.  Many other cases could be cited.  The practice seems to have been the same in the District.  *McNeil* v. *Cannon*, 1 Cr. C. C. 127 (decided June 1, 1803); *Electric Lighting Co.* v. *Leiter*, 19 D. C. 575 (1886).

We think, therefore, that save in cases within the meaning of the act of 1747, the courts of this District have full power to render judgments upon confession either upon the appearance of the party in person, or through a warrant of attorney for that purpose.

It is proper to add that there was some looseness in the preparation of the record for appeal in this case which might have seriously affected the appellant, had a point been made thereon; but as the defect has been waived by the appellee, we have treated the record as correctly presenting the points raised on the argument, and none other.

For the reasons given above, *the judgment must be reversed, with costs to the appellee, and the cause remanded for new trial; and it is so ordered.*